PHILLIPS and others *v.* RISSER and others.[1]

(*District Court, N. D. Illinois.* June 29, 1885.)

1. PATENTS FOR INVENTIONS — ERRONEOUS STATEMENT OF OBJECT OF INVENTION.

A patent is valid if the invention is applicable to one use, although it is not applicable to all the uses suggested by the inventor.

2. SAME—VOID REISSUE—UNWARRANTED ENLARGEMENT AFTER TWO YEARS.

Where the reissue was applied for more than two years after the date of the original, and the claims were expanded, *held,* that such reissue was void.

3. SAME—CAR AND WAGON UNLOADING APPARATUS.

Reissued letters patent No. 4,212, of December 20, 1870, to Nicholas E. Phillips, are void because for a different invention from that described in the original, No. 83,405, of October 13, 1868.

In Equity.

*Burnett & Burnett,* for complainants.

*Peirce & Fisher,* for defendants.

BLODGETT, J. By this bill complainants charge defendants with the infringement of reissued letters patent No. 4,212, issued to complainant, December 20, 1870, for "an improvement in wagon and car unloading apparatus," the original patent, No. 83,405, having been issued to Noah Swickard, October 13, 1868. The leading feature in the device is the arrangement of two tilting bars with a platform in such manner that the wheels of the wagon or car to be unloaded can be brought to rest on these bars, when, by tilting the bars, the body of the vehicle is tipped to such an angle as to cause the contents to slide or be dumped out by its own gravity. The defenses interposed are: (1) That the patent is void for want of novelty; (2) that the defendants do not infringe; (3) that the reissued patent is for a different invention from that described in the original, and is such an enlargement of the specifications and claims of the original patent as to make the reissue void.

The proof shows a number of devices, prior to that covered by this patent, for unloading cars or trucks by tilting the platform on which they stand so as to cause the contents of the car to slide out or be

---

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

dumped into a bin or chute; but from the proof I conclude that Swickard was the first to produce a device by which the wagon was tipped or thrown into an inclined position, by means of vibrating bars or rails, which operated in connection with a fixed or stationary platform; and this arrangement seems to be particularly adapted to dumps for unloading bulk grain from wagons drawn by teams, as the team can pass readily upon the fixed platform, the wheels being so guided as to be brought to rest upon the rails or bars forming part of the vibrating platform.

Most, if not all, the prior devices seem to have been specially adapted to unloading the contents of cars or trucks run upon railroad tracks or tram-ways; but it is noticeable that Swickard specially states that his invention is to be used for unloading wagons or cars, although he only shows it in use as arranged for unloading wagons. But it is suggested that if it is applicable to the unloading of cars it must be radically changed; that, while an ordinary farm wagon stands upon wheels at such height that a sufficient inclination can be obtained by dropping the hind end down until the rear axle strikes the fixed platform, the much smaller wheels of a car would cause the axle to strike the fixed platform before the requisite inclination was secured. It is, however, undoubtedly true that the mere suggestion of this patentee that his machine can be used "for unloading wagons or cars" would not invalidate it as a wagon unloader, even if it should require inventive genius to adapt it to the unloading of cars; that is, it may not be used to unload cars, as the word "car" is commonly used, in contradistinction to "wagon," yet it may cover a valid device for unloading a wagon, and would be valid if it is applicable to one use, even if it is not applicable to all the uses suggested by the inventor. The proof, therefore, shows that there is some advantage in using these tilting rails insted of a tilting platform. I am of the opinion that defense of want of novelty is not made out, although i feel compelled to say that, in my estimation, there is much reason for doubting whether it requires anything more than mere mechanical skill to adapt the older devices to the unloading of wagons. The patent, at least, must be construed to stand upon a very narrow basis.

As before stated, the original patent showed two platforms; that is, a fixed platform, A, and a vibrating or tilting platform, working in slots in the fixed platform, the pivoted balance bars being tied together at their forward end by a cross-board, which rested upon the fixed platform when the movable one was level with the fixed one, so that the vibrating or tilting bars could not move or act independently of each other, but must raise or lower at the same time. The cross-board or plank, C, also acted as a stop to keep the forward ends of the tilting rails from dropping below the fixed platform, while, by the arrangement of the keys, E, E, they held the rear ends of the tilting platform in place until the wagon was drawn onto them, when, by

means of a lever, these supporting keys were withdrawn, and by a slight effort, or the weight of the operator, the rear end of the movable platform was dropped to an angle required to slide the load from the wagon. Each of these tilting rails also contains a self-acting dog, G, which was intended to act as a check to prevent the wagon from running back after it had been drawn upon the platform; and, in order to guide the wagon onto the tilting platform, the lid of the hopper was made long enough to reach from inside to inside of the rail, and raised a couple of inches above the platform, so that it would serve to guide the wheels onto the tilting rails. There was also fixed to the forward ends of these tilting bars a bar or hook, which was intended to prevent the front end of the movable platform from rising higher than should be required to secure the necessary slope of the wagon for causing the load to slide out.

The claims of the original patent were:

"(1) The slotted platform, A, in combination with the pivoted balance bars, B, B, board, C, end-bars, I, I, and stops, H, H, all constructed and operating substantially as and for the purposes herein set forth. (2) The pivoted balance bars, B, B, provided with one or more self-acting dogs, G, in combination with the spring toggle keys, E, E, and key, F, all constructed and operating as and for the purposes herein set forth. (3) The arrangement of the slotted platform, A, balance bars, B, B, and lid, D, to the hopper, substantially for the purposes set forth."

It will be seen that the first claim is for the combination of these two platforms, the one fixed and the other capable of the tilting motion described, with the cross-board which tied the forward ends of the tilting rails together, and the hooks or end-bars which limited the height to which the forward end of the tilting platform could rise. The second claim is for the tilting bars, provided with one or more self-acting dogs, in combination with the keys, by which the rear of the tilting platform was held in place while the wagon was being drawn onto it; while the third claim is for the two platforms and lid of the hopper arranged so as to act as a wheel-guide.

The patent as reissued contains seven claims, and the infringement in this case is charged as to the first, fifth, sixth, and seventh claims. These claims, as to which infringement is charged, are as follows:

"(1) The tilting platform, B, in combination with platform or floor, A, as and for the purposes set forth. * * * (5) The combination of platforms, A and B, with a stop device, I, for the purpose set forth. (6) The combination of platforms, A and B, with a receiving bin or chute, C, operated substantially as described, for the purpose set forth. (7) The combination of platforms, A and B, with lid, D, for the purposes set forth."

It is conceded that the defendants have constructed grain dumps with tilting rails, each pivoted and working independently of the other, substantially like the defendants' Model A, in evidence in this case, with some variation as to the mode of locking or stopping the rear end of the rails in place, and one dump, like the defendants' Model B, in which, as will be seen, the forward ends of the tilting

rails are tied together by a cross-plank; and the first question I propose to consider as to this branch of the case is whether these dumps constructed by the defendants infringe either of these claims of the reissued patent.

The first claim of the reissue is for the tilting platform, B, in combination with the fixed platform or floor, A. In the specifications of the reissue it is said the tilting platform is so constructed "as that its forward end shall rest upon the stationary platform." It must be obvious to any one who studies the operation of these devices that some way must be provided for holding the forward end of the movable platform so that it will not fall below the fixed platform. The specifications of the reissue give no instructions as to how the forward end of the tilting platform is to be constructed, so that it shall rest on the stationary platform; but the drawings show a cross-board which ties the forward ends of the two pivoted bars together, and this cross-board, when these forward ends drop to the level of the fixed platform, must rest on the fixed platform, and thus hold the movable platform level with the fixed platform. This mode of construction is clearly shown in Fig. 2 of the reissue drawing. It may, as I think, be correctly said that this mode of construction shown in the drawings is only one mode, and does not limit the patentee to that mode of construction only; that is, he may, by the reissued patent, use any mode of construction by which the forward end of the movable platform is made to rest on the fixed platform. The rails of defendants' dumps constructed according to Exhibit A rest upon a cross-timber fastened under the stationary platform; while the dump constructed according to Exhibit B shows the forward ends of the rails tied together, so that the cross-board rests on the stationary platform. It seems to me, therefore, that the dumps of the defendant infringe this first claim; that is, they use the fixed and tilting platform acting together substantially as in the reissue, because these two pivoted rails working in their respective slots, when resting upon their front and rear bearings, form a platform, and when a wagon is driven upon them it stands practically upon a platform composed of these two rails and the bearing upon which they rest. When the keys or locks of the rear ends of these rails are removed, then the platform can be tilted, and thereby the wagon put at such an angle as to discharge its load. The tie-bar shown in the defendants' dump, B, and in the drawing, is really inoperative and performs no function, if some other rest for the forward ends of the bar is provided, because these bars working in their slot are all that are needed to hold the four wheels of the wagon, and are practically a platform of themselves, without regard to a tie-board or cross-board connecting their forward end.

The fifth claim is for the combination of the platforms, A and B, with the stop device or hook, by which the platform is prevented from tilting further than is necessary to unload the wagon. The defend-

ants do not use this stop device, and therefore do not infringe this combination.

The sixth claim is for the combination of the platforms, A and B, with the receiving bin or chute. As I shall have something to say about this claim in considering the validity of this reissue, I will only say, in passing, that no special form of receiving bin or chute is shown or described in the specifications. The very idea of dumping or un- loading the contents of a wagon or car presupposes that the contents are to be dumped into some receptacle; and it may well be doubted whether this claim is not too vague and uncertain to be upheld.

The seventh claim is for the combination of the platforms, A and B, with the hopper lid, D. This lid, D, as has been said, is arranged to act as a guide to run the wagon wheels upon the rails, and, as de- fendants use no such device, but have dropped their vibrating rails a slight distance below the surface of the fixed platform, so as to make sure of running the wheels upon the vibrating rails, they do not in- fringe this combination, their wheel guide being different from that provided in the patent. I therefore conclude that the defendants' dumps infringe the first claim of this reissued patent.

I now come to consider the validity of this reissue. It will be no- ticed that this reissue was applied for and made more than two years after the issue of the original patent, and the defendants insist that this case is by that fact brought within the cases of *James* v. *Camp- bell* and *Miller* v. *Bridgeport Brass Co.* Complainants insist, how- ever, that the claims of the reissue are but a restatement of the claims of the original patent. A comparison of the original with the reis- sued patent shows that the specifications have been much amplified, and, to some extent, new elements are introduced into them. For instance, in the original patent it is said:

"A plank or board, C, is secured to the front end of such bars, so that they cannot work independently or separate from each other, but must raise and lower at the same time."

In the reissue it is said:

"A tilting platform, B, so constructed as that its forward end shall rest upon the stationary platform, while the rear end, consisting of beams or bars, B, shall play within the openings or slots formed in the floor, so that, when required, the rear end of the platform may descend below the line of the floor."

Here we have, as it seems to me, a radical departure from the mode of construction indicated by the original patent. The original patent required imperatively that the forward ends of these tilting bars should be fastened together so that they could not work inde- pendently or separate from each other, but must raise or lower at the same time. By omitting this element from the reissue, the patentees have caused their device to cover a device which would not be cov- ered by their original patent. Neither the claims of the original pat- ent, nor the specifications, seem to anticipate any other form of con-

struction than one in which the vibrating bars should be fastened together at their forward ends, so that they could not operate independently or separate from each other. By the reissue all that seems to be required is that some rest or stop shall be provided to prevent the forward ends of the vibrating rails from falling below the level of the fixed platform, and, as I have already said, the defendants so construct their dump that the forward ends of the vibrating rails rest upon a timber fastened to the under side of the fixed platform. Here is a new invention or different invention described and claimed from that described and claimed in the original patent. The original patent claimed a vibrating platform of a peculiar construction, with certain elements in it. The reissue claims a different vibrating platform, with less elements in it, and describes a vibrating platform not covered by the original specifications or claims.

As, in considering the question of infringement, I have held that the defendants only infringe the first claim of the reissue, it may not be necessary to consider the validity of the fifth, sixth, and seventh claims of this reissue; but I can hardly forbear the passing remark that the sixth claim of the reissue, which is for the combination of the two platforms with the receiving bin or chute, seems to me to be a most unwarrantable enlargement and expansion of the original patent. The original patent contained no suggestion or description of a receiving bin or chute. The only possible allusion to it is the mention of the lid to the hopper; and yet, by the sixth claim of this reissue, an element which is not in the original patent, either by description or claim, is made one of the elements of a combination. It therefore seems to me that this reissued patent must be held void, as being for an invention not described in or covered by the original patent. This patentee could not, by this reissue, add new features or omit old features, especially after the lapse of so much time from the issue of the original patent.

The proof in the case shows quite conclusively that, at or about the time of the issue of this original patent, this kind of dumps or devices for unloading wagons came into use, especially at elevators and corn-shelling warehouses at railroad stations, and it was found by practical experience that two pivoted rails so arranged that the wagon could be driven upon them, with proper stops to hold them in place, and a device for the releasing of the stop when ready to dump, was all that was necessary for the purpose, and Sypes, McGrath, and other inventors entered the field with this simpler form of dump, whereupon plaintiff sought and obtained this reissue in order to cover this less complicated construction which others had introduced and proved useful.

This bill is dismissed for want of equity.